The opinion of the Court, except the Chief Justice, who did nol sit in the cause, was afterwards delivered as follows, by
Sedgwick, J.
The question is, whether the persons summoned are, upon their answers to the interrogatories put to them, to be ad judged trustees; whether, upon these answers, it appears that they have in their hands any goods, effects, or credits, which by law ought to be appropriated to the payment of the debts of William Smith, the defendant. This depends upon the nature of the transaction be *35 tween Smith and his creditors, as it appears in itself, and as it is opened and explained by the answers.
Smith being insolvent and unable to pay all his creditors, distressed by suits, and his property embarrassed by attachments, desirous of extricating himself on the one hand, and willing, on the other, to satisfy his creditors, as far as he could, a project was formed for this purpose. By it an indenture was to be made of three parts, of himself, of such creditors as would accede to his proposals, and of Stephen Gorham. On the part of Smith (provided, before he signed it, there was a general assent on the part of his creditors), an assignment of what we must.understand to be the bulk of his property, and probably all except his household furniture, to * be equally pro rata paid to and among such creditors as [ * 49 ] should become party to the contract. The creditors, who had other security beside the assignment, were to retain it. The creditors were to release Smith; and Gorham, who, in one way or another, was responsible for the negotiable paper of Smith, was still to remain so. The indenture being formed conformably to this general intention, it was assented to, and executed by Gorham. All the creditors who were known, except an instance of a foreign debt, which will be particularly noticed hereafter, were applied to, and among the rest the present plaintiff. They generally assented, and executed the indenture. The plaintiff refused. After the execution by the creditors, the instrument was returned to Smith, and he executed it. Now, here was a great deliberation, apparent fairness, and n j corrupt intention among any of the parties. There was no resulting trust for the benefit of Smith, or any one else; for it is sworn that it was understood at the time, that the assignment of Smith was intended to operate as an absolute conveyance of the property, to the use of such creditors as were parties to the contract. It appears, too, that the amount of the debts due from Smith greatly exceeds the value of the property conveyed for their satisfaction. For, however obscure or uncertain the evidence might be as to this latter fact, before answers were made to the last interrogatories, which were put after the argument, by those answers it is rendered sufficiently certain. And it has been determined that such answers, upon the question of trustee or not, must be taken to be true.
As independent of the policy and provisions of a bankrupt law (and none such now exists here), it is certain that it is lawful for a debtor to pay one or more creditors, to the exclusion of others, and lawful for the latter so to receive, provided it be done fairly and honestly ; and as it is conceded that in this case the intention was in conscience fair and honorable, it is important * to [ * 50 ] examine the several objections to the transaction, by which *36 it was intended that it should be concluded that it is so opposed to the principles or policy of the law, that the contract ought not to be carried into effect.
There was certainly nothing wrong, when Smith found himself in .nsolvent circumstances, to disclose his situation to his creditors, and to propose to pay them, in equal proportion, as far as his ability extended ; and to obtain therefor a discharge from his debts. On the part of his creditors there was nothing iniquitous in acceding to such a proposal. And if there were any of Smith’s creditors, who disliked the terms which were offered, and preferred the chance of obtaining satisfaction by other means, it was competent and right for them to refuse. But there seems no good reason why such refusal should prevent Smith and the other creditors from executing an accommodation, which appears so humane and just. Still, however, if any of the reasons, offered on the part of the plaintiff, are available to the purpose, for which they were intended, — to show that the contract is void, as it respects the creditors who are not parties to it, — the plaintiff must prevail, and the persons summoned as trustees, adjudged to be so.
The several facts and arguments, relied upon and urged for this purpose, have been deliberately considered by the Court.
The first objection, as understood by us, is, that at the time the indenture was written, it was uncertain what number of the creditors would close with the proposal, and of course to what proportion of his debts the whole of his property conveyed would be appropriated ; and that, to fix the nature and character of the transaction, we must carry our minds to the point of time when the proposition was made, by being reduced to writing.
As to this objection, we must recollect that the proposition was intended to be made to all the creditors; that Smith with-[*51] held the execution of it until he should *know its success ; and that, at the time he did execute, the great bulk of his debts were made the subject of it. And it may be added, that every deed receives its validity from the execution; and whether it is, or is not a lawful contract, must depend upon the circumstances then existing, Now I see nothing, so far as this objection extends, which, at the time the deed was executed, can be a just reason for saying that the contract shall not be carried into effect; but, on the contrary, the motives appear perfectly just and reasonable.
The next objection is, that the description of the property conveyed is general, and not so specific that the amount can be known; that the freight earned by the Levant and the Columbia; the two cargoes assigned without invoices, bills of lading or valuations; debts described as due generally from four insurance offices; and *37 the real estate lying generally in Boston, Charlestown, and the district of Maine, are all general. And it is said, that if such a general assignment of property shall be held to be effectual in the case of an insolvent debtor, it will be easy so to cover it as to protect it against his creditors.
To this I answer, that in all the instances pointed out, as the foundation of the objection, the several subjects are so referred to, that, on investigation, every particular might be easily known; and that therefore the maxim, Id cerium, est quad cerium reddi potest, is a sufficient answer to the objection (a). And besides, by the answers, we have every particular displayed to us that is necessary to be known.
It is also objected, that by the indenture the creditors, who are a party, do not release their debts; but that Gorham is still holden responsible in all instances in which he has lent his name to Smith upon his negotiable paper.
I can hardly perceive any force in this objection, as coming from the plaintiff, because it seems to me to point to the hardness of the contract as it respects Smith. *But I do not [ *52 ] perceive that, in any view, it was not a reasonable provision ; for if the creditors were willing, upon the considerations which influencéd them, to release Smith, I cannot perceive why they might not consistently retain any collateral security they had from Gorham; and more especially, as they will not from both be able to receive the full amount of their debts.
It was further said, that the provision which was made secured to certain creditors the benefit of their attachments, and also admitted them to participate, in an equal proportion, in the proceeds of Smith’s property, with the other creditors; and that this is a circumstance which ought to be considered as decisive against this contract; because thereby the attaching creditors might receive more than the amount of their debts.
What would be our opinion, provided, upon the whole case, it ap peared that the attaching creditors would receive a sum over and above the amount of their debts, it is unnecessary now to determine. That this question might be fully within the view and contemplation of the Court, was a motion for directing the additional interrogatories. From the answers to those interrogatories, it appears, not only in fact, that no creditor will by any means receive lhe full amount of his debt, but that, at the time of entering into the contract, there was no expectation that any would. There is *38 not, then, any surplus, beyond satisfying bona Jide debts, which may not be retained with good conscience.
Again, it was said, that the indenture was executed by agents and attorneys, who could not bind their principals, unless they were authorized by deed to do it; and that it does not appear that they were so authorized.
To this it may be answered, that it is either the deed of the attorney, or of the principal. If the attorney was not duly authorized, it must operate as his deed (a), and if not directly a release to Smith, it must be construed as a covenant for his security; and that if he was willing to rely upon it, and was satisfied with it, [ * 53 ] it is not a circumstance, * for which the plaintiff has a right to object. But we are all of opinion that, as this case is before us, we ought to presume that, when one undertook to act as attorney, and did so act, he was duly authorized (b).
Another objection is, that the registers of the vessels assigned were not exchanged, at any time after the assignment, and before the sale by the agents of the creditors.
This objection cannot avail, because we are all satisfied that an exchange of a register is not necessary, in the sale of a ship, to transfer the property in it; and that all the effect of not obtaining a new register is, that the ship loses the privileges of an American bottom.
There is but one creditor, the foreign house, that was not invited to join in the contract; and from the answers in this regard, it appears that that house has in its hands more than sufficient to satisfy the debt due to it; and by the answers, the persons summoned must appear to be trustees within the statute, or they must be discharged.
Upon the whole, we do not think that the contract between Smith and his (reditors can be construed to have been made with an intent to defeat or delay his creditors; but to us it appears to have beer entered into fairly and bond Jide; and that therefore the supposed trustees must be discharged.

 Livingston vs. Delancey, 11 Johns. 365; 13 Johns. 537; IS Johns. 97. — Crosby vs. Allen, 5 Greenl. 453. — Whitaker vs. Sumner, 9 Pick. 308.

 No action can be maintained upon the deed, against one who signs, as attorney in the name of the principal. Ballou vs. Talbot, 16 Mass. 461. — Loi.g vs. Colburn, 11 Mass. 97.

 Herring vs. Polly, 8 Mass. 113.