MEDORA, The (DESHON v.). See Case No. 3,820.

MEDORA, The (LELAND v.). See Case No. 8,237.

MEE (MARSHALL v.). See Case No. 9,129.

MEEKER (UNITED STATES v.). See Case No. 15,757.

———

## Case No. 9,392.

### MEEKER et al. v. WILSON.

[1 Gall. 419.] [1]

Circuit Court, D. Massachusetts.    May Term, 1813.

SALE — ASSIGNMENT OF CHATTELS — DELIVERY — CREDITORS—PROPERTY WITHOUT COUNTRY—EXECUTION SALE—NOTICE OF ASSIGNMENT.

1. A grant or assignment of chattels is valid at common law between the parties, without actual delivery of the chattels, and the property passes immediately on the execution of the deed. But, as to creditors, the title is not perfect, unless possession accompanies and follows the deed.

[Cited in Re Hussman, Case No. 6,951.]

[Cited in note to Perry Ins. Co. v. Foster, 58 Ala. 502; Hempstead v. Johnston, 18 Ark. 123; Walters v. Whitlock, 9 Fla. 86; Watson v. Williams, 4 Blackf. 29; Shaw v. Thompson, 43 N. H. 132; Davis v. Bigler, 62 Pa. St. 248.]

2. Want of possession is evidence of fraud.

[Cited in Shaw v. Thompson, 43 N. H. 132; McKibbin v. Martin, 64 Pa. St. 355.]

3. If, at the time of the transfer, the property was without the country, possession must be taken within a reasonable time after its return, or the grant will be held fraudulent.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015.]

[Cited in Fall River Iron Works Co. v. Croade, 15 Pick. 18; Ricker v. Cross, 5 N. H. 572.]

4. Property in the hands of a third person, having a lien thereon, is not attachable in a suit against the general owner; but if the depositary waive his lien, the objection does not lie in the mouth of the general owner.

[Cited in Ricker v. Cross, 5 N. H. 571.]

5. If chattels are sold on an execution, the regularity of such sale cannot be contested by mere strangers.

6. Notice of an assignment of chattels to a judgment creditor, where possession has never been taken under the assignment, does not affect the right of the sheriff or the creditor to seize the property in execution, as the property of the assignor.

This was an action of trover, brought by the plaintiffs [Samuel Meeker and others,] against the defendant [Luther Wilson], who was a deputy sheriff of the county of Bristol, for the conversion of a parcel of sugars, alleged to be the property of the plaintiffs. At the trial, the facts proved or admitted were as follows. Jacob Shoemaker and Charles R. Travers, of Philadelphia, being in failing circumstances, on the 6th of December, 1806, made an assignment of their estate to the plaintiffs for the benefit of their creditors, including, among other things, the cargo on board of the brig Deborah from Guadaloupe,

[1] [Reported by John Gallison, Esq.]

of which cargo the said sugars were a part. Soon after this assignment, and in the month of December, 1806, the Deborah arrived at New Bedford, and the cargo, not being entered according to law, was taken possession of by the collector of the port for payment of the duties due thereon to the United States. On the 17th of January, 1807, while the cargo was in the custody of the collector, Messrs. Port & Russell of New York, creditors of Shoemaker and Travers, sued out of the court of common pleas for Bristol county a writ of attachment against Shoemaker and Travers, upon which the defendant returned, that he had attached the cargo of the Deborah, the same having been previously attached at the suit of Howland and Allen, and Thomas Allen. At the time of this attachment, the property was in Messrs. Howland and Allen's store, where it had been deposited by the collector and attached by them, and no removal was made; and it was admitted that the attachment was intended to be made by all parties subject to the claim of the United States for the duties. On the 21st of July, 1807, a writ issued at the suit of the United States against Shoemaker and Travers, upon which an attachment was made of the same property. No removal, however, took place, but a part of the property was then separated from the rest, by a partition in the store, for the purpose of being applied to satisfy the duties due to the United States and charges. This suit of the United States was discontinued at the December term of the district court, 1807. On the 28th of September, 1807, the collector sold so much of the cargo, as was necessary for the payment of the duties and charges; and the residue was, on the 29th of the same month, sold by the defendant on the execution, which issued on the 24th of said month, upon a judgment obtained at September term, 1807, of the common pleas, by Messrs. Port & Russell, against Shoemaker and Travers, on their writ of attachment aforesaid, for the sum of $13.7056, damages, and $12.96, costs. The defendant, in his return on the execution, did not state that he had kept the property four days, &c. according to the requisitions of the statute of Massachusetts of March 17, 1784 (section 5). The present suit was commenced against the defendant on the 18th of October, 1808, and there was no evidence, that at any time before that day, he had had any notice of the assignment or claim of the plaintiffs, or that the plaintiffs had made any effort to obtain possession of the property.

Upon these facts the court directed the jury, that although an assignment of property abroad might be valid in law, yet it was the duty of the assignee, in order to perfect his title, to take possession of the property within a reasonable time after it came within his reach, and if he neglected so to do, it became liable to attachment at the suit of the creditors of the assignor. That in the present case, there was no notice at all of the

claim of the plaintiffs for more than a year after the property had been seized and sold in execution; and that, under these circumstances, the laches of the plaintiffs must be considered as extinguishing all right of action against a public officer, who, having no notice of an adverse claim, was compellable to seize the property on the execution; that as between the parties to the present suit, it was not material to inquire, whether the officer had, in the sale, conformed strictly to the law or not. On the face of his return, there was nothing repugnant to law; and if he had acted in an irregular manner, he was liable to Shoemaker and Travers for all the damages, they had sustained thereby; that the title of the present plaintiffs stood altogether independent of the regularity of these proceedings. If their title were good, it could not be affected by the conduct of the officer, whether correct or otherwise; and in this suit, which was for mere damages and not in rem, it could not be disputed, that the property in the goods passed by the sale under the execution; that whatever legal doubts might arise, as to the right to attach property in the custody of the collector for a lien of the United States, the question could only arise in a suit, to which the United States or the collector was a party, and not in a suit between strangers to that lien; and it was sufficient, in the present case, that the property sold on the execution had been completely discharged of such lien before the levy; that admitting the right of the United States to a priority of attachment, (on which the court gave no opinion), that right could not be vindicated by mere strangers, and in the present case it was utterly extinguished by the voluntary discontinuance of the suit of the United States, previous to the commencement of the present action; and at all events, none of those special circumstances varied the necessity of the plaintiffs' giving reasonable notice of their claim to the defendant. and, therefore, the general principle, as to the reducing of the assigned property to possession within a reasonable time, must govern the rights of the parties to the suit.

A motion having been made for a new trial, upon the ground of a misdirection of the court; and also of the possession of other important evidence, which was omitted at the trial, from the inadvertence of counsel:

G. Blake, for plaintiff.
S. Dexter, for defendant.

STORY, Circuit Justice. By the common law, a grant or assignment of goods and chattels is valid between the parties, without actual delivery thereof, and the property passes immediately upon the execution of the deed. But as to creditors, the title is not considered as perfect, unless possession accompanies and follows the deed. The want of possession is considered in some of the authorities as an evidence or badge of fraud to be submitted to the jury, but the more modern authorities hold it, as constituting in itself, in point of law, an actual fraud, which renders the transaction, as to creditors, void. 3 Coke, 80; 2 Term R. 587; [Hamilton v. Russell] 1 Cranch [5 U. S.] 309. In Benton v. Thornhill, 2 Marsh. 427, 429, Gibbs, C. J., dissented from the doctrine, that want of possession was per se conclusive of fraud. The entire law will be found collected in Mr. Smith's note to Twyne's Case, 3 Coke 80. See ,1 Smith, Lead. Cas. p. 1. See, also, Mr. Wallace's careful and elaborate note to the same case, where all the American learning is collected. Philadelphia Law Lib. for January, 1844. It is true, that the cases, in which these decisions have been made, turned upon the construction of the statute of frauds of 13 Eliz. c. 5, but that statute is now fully settled to be only an affirmance of the common law. Cowp. 434; [Hamilton v. Russell] 1 Cranch [5 U. S.] 309. An exception to the rule is, where the possession of the grantor is consistent with the deed, or where the property conveyed is, at the time of the conveyance, abroad and incapable of delivery. In the latter case the title is complete, provided the grantee takes possession within a reasonable time after the property comes within his reach. If he does not, the same inference of legal fraud arises, as if the property had been originally capable of immediate delivery, and the possession had remained unchanged. These principles of the common law are undoubtedly founded upon the consideration, that possession of personal chattels constitutes the ordinary indicium of ownership, and that the greatest public mischiefs would arise, if secret and unavowed transfers might overreach the attachments of creditors. It would enable debtors to hold out false colors, and protect covinous contracts from the animadversion of the law. The mischief would be still greater as to sheriffs and other public officers, who are bound to take the property of debtors in execution. They must act at their peril (Dalton, 146; Gilb. Ex'ns, 21), and where the debtor is in the open and visible possession of property, exercising acts of ownership, they are compellable to seize it on the proper judicial process; and great indeed would be the hardship, if their proceedings could be overhaled in an action of tort, where the utmost diligence and care could not protect them from deception. Upon principle, independent of all authority, it would seem that substantial justice would require that a party, who has a secret transfer of property left in the possession of the original owner, should be held to waive his rights in favor of creditors and public officers, even if the case were not held infected with fraud. "Vigilantibus non dormientibus leges subserviunt."

Upon these principles, independent of the special objections, which I shall notice hereafter, how stands the present case? The assignment was made on the 6th of December; the cargo arrived soon after at New Bedford;

and an almost irresistible presumption arises of early notice thereof to the assignees. The property was documented as belonging to Shoemaker and Travers, was taken into the custody of the United States as such, was attached in the same character by Howland and Allen, and also by Messrs. Port & Russell, by the defendant, on the 17th of January following, and again by the United States in the July following; and although it remained unsold until September, the assignees never made any claim thereto, nor asserted their possession: nay further, no notice ever appears of their claim, until October, 1808. Under such circumstances, it seems impossible to maintain the present suit, unless the grossest laches entitle a party to the favor of the law. The case of Bamford v. Baron, 2 Term R. 594, note a, would alone be decisive. But it is argued, that the property, being in the custody of the United States, was not legally attachable by the defendant, and that therefore he stands in the character of a mere trespasser ab initio; and I have no doubt that in point of law, property in the hands of a person having a lien thereon cannot be taken from him under an attachment against the general owner. Vide Whitaker, Liens, 142; Vin. Abr. tit. "Pawn," A 3. He has a right to retain it, until discharged of the onus; and if it be wrongfully taken away, he may maintain an action against the seizing officer for the tort. But he may waive his right, and if he does, it is no objection in the mouth of the debtor himself. As to his assignees, if their title be consummate before the seizure, the officer is not the less liable on account of the lien; and if their title be defective, it cannot be made better by an independent title in a third person, with whom they have no relation. The objection rests on the supposition, that the plaintiffs had a legal title to the property; for if they have not, it is immaterial to them what has been done with it; but on the general principle, which I have stated, we are of opinion, that the title of the plaintiffs, under the assignment, was void as against creditors. A similar answer may be given to the argument, that the officer has not, on the face of his return, disclosed matter sufficient to show, that the property was sold under the levy in a legal manner. If the assignees had no title to the property, they cannot be injured by this irregularity: and the wrong, if any, was done to Shoemaker and Travers; and as to the objection founded on the suit of the United States, it is sufficient that no right under that suit is now in controversy.

On the whole, we are satisfied that the direction of the court at the trial was correct. The assignees, having omitted to take possession of the property within a reasonable time after it came within their reach, must be considered as voluntarily leaving it in the possession of the assignors, and as therefore possession did not accompany or follow the deed, the conveyance, as to this property, was in point of law void against creditors. The laches of the assignees amounted to a legal abandonment of all right to the property under the conveyance. But an application has been made to our discretion to grant a new trial, because the party has not had the benefit of the whole evidence of his case, through the inadvertence of counsel. I do not know, that the inadvertence of counsel in the management of a cause has ever been considered as a substantive ground for granting a new trial, and it would certainly be a dangerous practice to introduce at this time. There are however peculiar circumstances connected with this case, which, if the new evidence proposed could be available in point of law, might induce the court to accede to the application.

The new evidence proposed, as it was admitted in the argument, would go no further than to show, that Messrs. Port & Russell, before their attachment was made, had notice of the assignment. But it is not now pretended that the defendant ever had any such notice. I am at a loss to perceive how notice to Messrs. Port & Russell can vary the legal rights of the sheriff. No authority has been produced to show, that where a sheriff seizes goods in execution, which are in the possession of the judgment debtor, and used by him as his own, the acts of the sheriff become tortious by mere knowledge in the judgment creditor, that the same goods had been previously transferred to a third person. No such authority can be presumed to exist. The sheriff is bound to act in conformity with the commands of his writ, and to seize the property of the judgment debtor. If he seizes it, he is bound to proceed in the execution. If the property turn out to be the debtor's, the sheriff is at all events protected, whatever notice he or the judgment creditor may have, as to the rights of third persons. If the property turn out not to be the debtor's, the seizure is unlawful, and the sheriff is liable to an action, whether he has or has not any notice of the claim of the real owner. He acts, as I have before stated, at his peril. Notice of the claim of the assignees could not, as such, vary the legal rights of the sheriff. It could only be material, as one ingredient in the case, to unite with others in showing, that possession or its equivalent was sought and obtained within a reasonable time after the property came within their grasp.

In the present case, the original attachment by the defendant is conceded on all sides to have been in subjection to the rights of the United States; and as no actual custody was taken, it was merely nominal as to third persons. The first effective seizure was upon the execution; and at that time, all other prior claims of the United States by lien being extinguished, the property was in effect in the possession of the judgment debtors; no adverse claim having been made, or possession taken. The general property draws after it the possession, unless in special cases.

If at this time the officer had had actual notice of the plaintiffs' claim, as their laches would, in favor of a creditor, have avoided their title, I have no doubt that he would have been bound to have seized the property in execution; and if so, certainly notice to Messrs. Port & Russell could not make the case stronger. It is not necessary, however, to assume this strong ground. It is very clear, that the sheriff cannot be prejudiced by any knowledge of the judgment creditor. The legality of his acts depends exclusively upon the ownership of the property and the requisitions of his precept. Suppose there had been an agreement between the creditor and debtor not to take any property on the execution, would it be contended that a sheriff, to whom such agreement was unknown, would be a trespasser for obeying the injunctions of his precept? In Turner v. Felgate, 1 Lev. 95, no doubt was entertained that a sheriff was justified in seizing goods on an execution, although it issued irregularly under a judgment which was afterwards vacated on account of its having been unduly obtained. Bull. N. P. 84. I am yet to learn, however, in what manner the knowledge of Messrs. Port & Russell could affect the legality of the levy under the execution. Notwithstanding that knowledge, they had a right to contest, if they chose, the validity of the assignment. It has not as yet been established, to my knowledge, that the mere notice of a defective conveyance of property precludes the party having notice from availing himself at law of any right to attach that property; much less can it be admitted, that notice of a conveyance of personal chattels unaccompanied with possession, which the law has pronounced a fraud, can estop the party from his right, as a creditor, to defeat that fraud. And if the law were otherwise, it is clear that such notice cannot render a sheriff responsible in damages for conduct which otherwise would stand completely justified. And for myself, I am prepared to go further, and to hold, that if Messrs. Port & Russell not only had notice of the assignment, but had actually approved the same, and come in under it, (as was at first intimated to be the real fact, but is now abandoned,) the present action could not be maintained. A remedy at law or in equity might perhaps lie against Messrs. Port & Russell, to recover the proceeds of the execution after they had passed into their hands; but the sheriff himself would be protected, if the property, in point of law, was still to be considered as the property of the judgment debtors. No question has been made as to the effect of such an assignment, to convey the property of the debtor, lying in this state, so that it may not be subject to the attachment of creditors here. It will be time enough to consider that question when it shall arise. Vide, on this point, Le Chevalier v. Lynch, 1 Doug. 170; Hatch v. Smith, 5 Mass. 42; Widgery v. Haskell. Id. 144; Harrison v.

Sterry. 5 Cranch [9 U. S.] 289; Hunter v. Potts, 4 Term R. 182; Rex v. Watson, 3 Price, 6; West, Extents, 334; Pickstock v. Lyster, 3 Maule & S. 371. On the whole, I am satisfied that substantial justice, as between these parties, has been done; and I am against granting a new trial.

As the district judge concurs in this opinion, the motion for a new trial is overruled. Vide Ladbroke v. Crickett. 2 Term R. 649.