#### IN THE

## SUPERIOR COURT OF JUDICATURE.

#### FOR

## THE COUNTY OF ROCKINGHAM, JANUARY TERM,

### A. D. 1830.

---

## W. HAVEN and E. CUTTS *versus* JAMES RICH-ARDSON.

A debtor may lawfully assign all his property to pay the debt of a single creditor, or the debts of a set of creditors.

And neither a want of a schedule, or an estimate of the value of the property assigned, nor a stipulation in the deed of assignment, for a release of the debts of those who become parties to the deed, nor a reservation of the surplus after the payment of the debts of those who assent to the assignment, are conclusive evidence of fraud.

In all grants made by individuals, a general description of the things granted is sufficient.

When a debtor assigns property to trustees for the benefit of his creditors, it is not necessary that all the creditors should become parties to the deed of assignment before it is recorded.

THIS was a writ of entry, brought to recover a part of Shapley's island, so called, in Portsmouth, being part of the estate of the late Reuben Shapley, deceased, and was tried here at February term, 1829, upon the general issue, and a verdict returned in favor of the demandants.

To maintain the issue, on their part, the demandants gave in evidence to the jury an indenture, dated Octo-

15

ber 3, 1826, between Ann Shapley, of the first part, E. Cutts and W. Haven, of the second part, and certain creditors of Reuben Shapley, deceased, and certain creditors of Ann Shapley, who should execute the indenture, of the third part. In this indenture it was stated, that the said Reuben Shapley, by will, devised and bequeathed to the said Ann Shapley, his sole executrix, all his real and personal estate, subject to the payment of all his debts and legacies ; that certain debts and legacies, amounting to $8380, for which said Ann, as executrix, and said estate of the testator were liable, remained unpaid ; that the said Ann was indebted to the United States in the sum of $1137, 21 for duties, and that she was indebted in the sum of $70, for taxes assessed upon the estate of the testator. It was also stated, that the said Ann owed, on her own account, debts to the amount of $7144, 93, and that it had been agreed between the said Ann, and sundry of the creditors aforesaid, that she should assign all the estate, both real and personal, which belonged to the deceased, and also all that belonged to her, to said Cutts and Haven, to be sold, and the proceeds applied to the payment of said debts and legacies ; and then, in consideration of the premises, the covenants on the part of said Cutts, and Haven, and one dollar paid, the said Ann conveyed certain real estate described in the indenture, and " all and singular other real estate of whatever nature and wheresoever situate belonging to said Reuben at the time of his decease," except such parts as the said Ann had sold, and all his personal estate ; also all the estate, real and personal, of the said Ann, except wearing apparel and personal ornaments, to the said Cutts and Haven, in trust for the benefit of the said creditors. And the said Cutts and Haven covenanted to convert all the property thus assigned to them into money, and after deducting the expenses attending the assignment and agency, to apply the surplus to the payment of said claims in the following order, to which all parties agreed.

1st, All the legacies bequeathed by Reuben Shapley, the debt due to the United States, as aforesaid, and the said sum due for taxes, and all the debts of the testator, were to be first paid, if the property should be sufficient, if not, to be apportioned among these creditors.

2d, What might then remain, to be applied to the payment of the debts due to creditors of the said Ann, who should, within sixty days from the date, execute the said indenture.

3d, If any thing should then remain, it was to be apportioned among the creditors of the said Ann who might neglect to become parties to the indenture within sixty days, but who should become parties within one year from the date.

4th, If after this any thing remained, it was to be paid to the said Ann.

The indenture contained a release of all the debts of the creditors who became parties to it.

The demandants then introduced a copy of of the will of said Reuben Shapley, bearing date the 22d October, 1824, and proved the 19th February, 1825, by which he bequeathed to the Female Asylum, $400, payable in five years ; to Polly Robinson, $25, annually, during her natural life ; to H. C. Shapley, $20, during his natural life ; and after payment of the debts and said legacies, all the rest of his estate was given to said Ann Shapley, his wife, who was named executrix of the will.

At the time of the probate of said will, the said Ann, with two sureties, gave a bond to the judge of probate, conditioned to pay the testator's debts and the legacies mentioned in said will. The sureties, when they executed the bond, were reputed to be persons of property, but have since, as well as the said Ann, become unable to pay said debts and legacies.

It appeared, from an office copy of said indenture, introduced by the tenant, that, at the time of recording none of the creditors of said testator, or said Ann,

except Anthony Stocker, and John Stille and wife, by said Stocker, their attorney, had signed the same ; and no evidence was offered to show that said Stocker was authorized by said Stille and wife to sign in their behalf.

But it was proved, that within sixty days from the date of said indenture, the same was presented to the creditors, many of whom executed the same, and among others to the tenant, who declined signing it, observing that he should not get any thing, and that he might as well lose it one way as another.

The demandants then proved that a part of the real estate of said testator had been mortgaged by him to N. A. and J. Haven, as security for a debt of said testator of $5575,07, which remained wholly unpaid. They also proved, that there was justly due to sundry creditors of said testator, who had become parties to said indenture, the sum of $4537,49, and to creditors of the said Ann who had so become parties, the sum of $1906,29. The debt due to the United States was shown to be $1173,37, and the sum due for taxes about $70.

It also appeared, that the demandants had received for rents, and for furniture sold, $1348,55, and the taxes, insurances and repairs, together with debts due to the United States, amounted to $1423,30, and that the debt due to the United States had been paid, but no part of said legacies had been discharged.

No evidence whatever was offered by either party, as to the value of the property assigned to the demandants as aforesaid.

In order to maintain the issue, on his part, the tenant showed, that having sued out a writ against the said Ann Shapley, he caused the demanded premises to be attached by virtue thereof, on the 26th December, 1826, and having obtained an execution in said suit, he caused the same to be extended upon the said premises on the 1st September, 1827, and within thirty days after the rendition of the judgment on which his execution issued.

The tenant then proved by the said Ann Shapley, that said indenture was made at the request of John Haven, Thomas Haven and J. Mason, creditors to the estate of said testator ; that after the execution of said indenture she shipped to Philadelphia sundry articles not exceeding in value $60 or $70, and that this was done without the knowledge of the demandants.   It also appeared that said Stocker and Stille were the sons-in-law of the said Ann, and that she resided with them.

Upon the foregoing case the tenant's counsel contended, that said indenture did not comprehend the demanded premises, and that it was fraudulent upon the face of it, and, if not fraudulent upon the face of it, the circumstances attending the transaction, which had been disclosed in the evidence, furnished conclusive evidence of fraud.

The court instructed the jury, that the said indenture did comprehend the demanded premises, and that there was nothing on the face of the instrument, which showed it to be fraudulent ;  that an insolvent debtor might, in good faith, assign his property in trust for the benefit of his creditors, and in case the property so assigned was not more than sufficient to pay the demands of the creditors who assented to the assignment, the creditors who did not assent, could have no remedy upon the property thus assigned ;  that the consideration, stated in the indenture, was sufficient to make the contract binding upon the property of the testator, and of said Ann, to the amount of the just claims of the creditors who assented to the assignment ;  that the tenant had no right to call upon the jury, to infer that the contract was fraudulent, from the circumstance that the demandants did not show the value of the property assigned, because every transaction is to be presumed to be free from fraud, until the contrary is shown ;  and if the tenant would avail himself of the circumstance that the property assigned exceeded in value the amount of the demands of the credit-

ors, who had assented to the assignment, it was incumbent on him to show it.

The court further instructed the jury, that sweeping conveyances of property, made in secret, were in many cases strongly indicative of fraud ; but in this case it was their duty to consider the nature of the transaction, and see whether the assignment was more general, or done in greater secrecy than to carry the object honestly into effect.

The jury were further instructed, that the conversion by Ann Shapley of some of the articles comprehended in the assignment, to her own use, without the knowledge of the demandants, could not operate to render the assignment fraudulent, it being subsequent to the assignment, and the demandants being answerable to the creditors for the value of the articles so converted.

The court also instructed the jury, that although most of the creditors who assented to the assignment, had not, at the time of its being recorded signed the same ; yet, as it was signed by all before the tenant's attachment, he was in no better situation than he would have been had they signed it on the day of its date.

*Goodrich,* for the tenant.

We contend, that every assignment, which shows a design to compel a full discharge of the grantor by locking up the property from all who refuse to assent, is fraudulent and void. This position is surely sustained by reason, and we hope to establish it by authority. We shall, at least, show that this assignment possesses all the circumstances which courts have considered to be evidence of fraud. 4 Dallas, 87, *Burt* v. *Smith* ; 14 Johns. 463, *Hyslop* v. *Clark;* 20, ditto, 450, *Austin* v. *Bell;* 5 ditto, C. R. 329—332 ; 1 Hopkins, 395, *Mackie* v. *Cairns* ; 5 Cowen, 566, S. C. ; 12 Mass. Rep. 110 ; 5 ditto, 152 ; 3 N. H. Rep. 424.

In this assignment there was no schedule of the property conveyed ; no estimate of its value. It contains a

trust for the grantor. The trustees were selected by the grantor. It delays creditors for one year. These circumstances have always been held to be badges of fraud.

In the next place, we contend, that the court ought to have left the circumstances of the case, the want of schedule, &c. to the jury as evidence of fraud, instead of directing them to consider whether the assignment was more general, or done in greater secrecy than was necessary to carry the object honestly into effect. The jury were in effect told, that some secrecy was legal and proper. But they should have been told that the circumstances of the case were of a character which would authorize a jury to infer fraud from them.

We further contend, that the assignment is too loose and uncertain to convey any real estate except what is particularly described in it.

Again we contend, that evidence of the execution of the assignment by persons who were not parties to it when recorded, ought not to have been admitted. The debts of those, who so executed it, constituted a part of the consideration. Without them the assignment would have been fraudulent for a consideration grossly inadequate. Every deed must be adjudged valid, or not, according to the facts existing, when it is executed. A deed must be executed before it is recorded.

We further contend, that it was, under the circumstances, incumbent upon the demandants to show a full consideration for the assignment.

*I. Bartlett*, on the same side.

*E. Cutts* and *Mason*, for the demandants.

With respect to the priority in the payment of the debts, we say, that the small legacies in the will were of a charitable and very commendable nature. The executrix had made herself liable for them, and the estate of the testator was chargeable.

The debt due to the United States must be paid in full. Statute of the United States of 1799, cap. 128, sec.

65 ; 1 Peters' Rep. 438 ; 4 Wheaton, 108 ; 3 Cranch 81. The taxes were a lien upon the real estate, by the laws of this state.

The executrix had rendered herself liable for the debts of the testator. The whole estate of the testator was still liable for those debts. If this assignment be not valid, any creditor of the estate may extend his execution upon the demanded premises, and hold the land against the tenant or any other creditor of the executrix. She has left the state and may be removed from her executorship, and an administrator, *de bonis non*, may be appointed, the estate may be represented as insolvent, and the real estate be sold. A preference to the creditors of the estate was necessary.

With respect to the objection that the assignment is on its face fraudulent, we answer, that voluntary conveyances by insolvent debtors for the benefit of their creditors, either for an equal distribution of their property, or containing such preferences as the laws have created in analogous cases, have been generally commended in the commercial community. They are considered as the dictate of prudence, alike benefical to the creditor and debtor. Certainly much more property will be applied in discharge of debts, than by the operation of our attachment laws, where more is usually paid to attornies, sheriffs, &c. than to the creditors themselves.

Assignments of this kind have often been commended by courts. 4 East, 1, *Meux* v. *Howell* ; 3 M. & S. 371, *Pickstock* v. *Lyster* ; 4 Mason, 206 ; 2 Kents' Com. 420 ; 3 Price 6 ; 5 D. & E. 420, *Estwick* v. *Cailland*, and Ibid. 235, *Holbird* v *Anderson*.

In some cases it has been holden, that the obligation of the trustee to perform the trust without the assent of the creditors, is a sufficient consideration, as in *Wilt* v. *Franklin*, 1 Binney's Rep. 502.

In other cases it has been holden, that the deed binds the property no further than to the extent of the debts

of those creditors who have executed, or assented to, the assignment. 6 Mass. Rep. 342, *Stevens* v. *Bell* ; 7 Wheaton, 556 ; 11 ditto, 78.

In *Halsey* v. *Fairbanks*, 4 Mason, 214, Mr. Justice Story holds, that in all cases where the assignment is unconditional and certainly for the benefit of the creditor, the assent is to be presumed. In cases where there are conditions, such as reservations of benefits to the debtor, or a release from the creditor, the assent of the creditor must be proved. But when the assent is given, it is to have a retroactive operation, to the time of the execution of the assignment.

The assent of the creditors need not be given at the time of the assignment. A subsequent assent in terms, or by actually receiving the benefit of the assignment, will be sufficient. 2 Gall. 557, *Brown* v. *Minturn* ; 2 Kent's Com. 421 ; 7 Wheaton, 556, and 11 ditto, 78.

As to the clause of release, a debtor may indirectly exercise coercion over his creditors, through the influence of hope or fear, by excluding those from the benefit, who do not execute a release within a given time. 4 D. & E. 166, *Jackson* v. *Lomas* ; 3 Price, 6, *The King* v. *Braddock* ; 2 Kent's Com. 421 ; 4 Mason ; 206 ; 5 Pick. 28, *Andrews* v. *Ludlow* ; 5 Greenl. Rep. 245, *Fox* v. *Adams*.

In *Murray* v. *Riggs*, 15 Johns. 571, it was holden by the Court of Errors, that in a conveyance by an insolvent debtor, containing, among other matters, a provision for the insolvent's support, such provision did not vitiate the conveyance. It was so holden in *Mackie* v. *Cairns*, 5 Cowen's Rep. 560, by Sutherland and Woodworth, Justices, and several Senators ; 20 Johns. 445 ; 5 D. & E. 526.

The case of *Hyslop* v. *Clark*, 14 Johns. 458, turned upon the peculiar provisions of the assignment. The same remark is applicable to the case of *Seaving* v. *Brinkerhoff*, 5 Johns. Ch. Rep. 329.

In the case of *Harris* v. *Sumner*, 2 Pick. 129, the assign-

ment was holden to be void, on account of the reserva-
tion in favor of the assignor, and not on account of
the stipulation for a release.

With respect to the reservation of the surplus to the
assignor, it was holden in the case of *Wintringham* v. *La-
foy*, 7 Cowen, 738, that a reservation of the surplus, after
paying all the debts was not fraudulent.   It was so hold-
en by Story J. 4 Mason, 222.

A schedule or particular enumeration of the property is
not necessary in ordinary cases to make a transfer valid.
4 Mason, 219 ;  6 Mass. Rep.  339 ;  1 Binney, 502 ;  5
Mass. Rep. 42.

The opinion of the court was delivered by

RICHARDSON, C. J.   A new trial is claimed by the ten-
ant in this case, on several grounds.

1st, Because the deed of assignment is, on the face of
it, fraudulent and void.

2d, Because it is too loose and uncertain, to convey the
demanded premises.

3d, Because the circumstances, which the deed itself
discloses, and the secrecy, with which the deed was made,
were not submitted to the jury as evidence of fraud.

4th, Because no adequate consideration for the con-
veyance was shown.

5th, Because evidence of the execution of the deed
by persons who were not parties to it, when recorded,
was admitted.

We shall, in the first place, consider the circumstances
apparent upon the face of the instrument, which are
supposed to furnish conclusive evidence of fraud.

These circumstances are the want of a schedule of the
property conveyed ;  an assignment of all the property of
the grantor without any estimate of its value ; the reser-
vation to the grantor of the surplus that may remain af-
ter paying all the debts ; the stipulation for a release of
the debts of those, who became parties to the instrument,
and the preference given to the creditors of the estate of
the testator.

In order to determine how far these circumstances are conclusive evidence of fraud, it is necessary to understand correctly the nature of such an assignment, and the nature of the stipulations, which have been holden to vitiate such a conveyance.

It is now too well settled to be questioned, that a debtor may assign all his property to pay the debt of a single creditor, or the debts of a particular set of creditors, and the conveyance be held valid. Indeed, it would be very strange, if this could not be done, in a state where a debtor may sell all his property and appropriate the proceeds of the sale to the payment of a single debt, and where a creditor may, by process of attachment, seize all the property of his debtor and apply it to the payment of his own debt, to the exclusion of all other creditors. But an assignment of this kind must be made with good faith, for the purpose of paying debts, and without any intent to lock it up from other creditors for the benefit of the assignor. If there be any reservation of any part of the interest in the property assigned, to the use of the assignor, unless it be the surplus after all the debts are paid, or if the assignor reserves to himself a power to revoke the conveyance, or change the trusts by giving a preference to other creditors at a future time, such reservations render the whole conveyance void. 6 Cowen, 288 ; 5 D. & E. 238 ; 5 Cowen, 548 ; 2 Pick. 129 ; 2 Johns. Ch· Rep. 565 ; 14 ditto, 458.

The question is, in these cases, whether the assignment be made in good faith for the purpose of paying debts, or whether it be only a covenous assignment for fraudulent purposes. The reservations we have just mentioned are held to be conclusive evidence of a fraudulent purpose. But the better opinion seems to be, that no one of the circumstances on which the tenant's counsel relies to show the conveyance fraudulent on the face of it, is sufficient for that purpose.

On what ground it could ever have been supposed, that

Haven et a.
*v.*
Richardson.

the want of a schedule of the property was conclusive evidence of a fraudulent purpose in the assignment, it is not easy to imagine. Yet some of the judges, in the case of *Burd* v. *Smith*, 4 Dallas, 76, seemed to have viewed the want of a schedule in this light. But there was in that case a reservation to the debtor of the shares of those creditors who did not assent to the assignment, which clearly rendered the conveyance void ; and the case is understood by Tilghman, C. J. to have been decided upon that ground in *Wilt* v. *Franklin*, 1 Binney, 515, in which case it was decided that the want of a schedule is not conclusive evidence of fraud, and Mr. Justice Story has expressed his unqualified approbation of this decision. 4 Mason, 220.

With respect to the circumstance, that there was no estimate of the value of the property assigned, it may be remarked, that there is a wide difference between the case where a man makes an absolute sale of all his property to another without any estimate of its value, and the case where a man assigns all his property to another for the purpose of paying his debts without such an estimate. Such a sale would be so unusual, so much out of the common course of business, and would show such a want of that care and attention, which men are accustomed to use in a real sale, as to excite great suspicions, if the vendor were in debt. There are few men, who would be willing to fix a price which they would take for all their property, without some estimate of its value. And probably still fewer would be found willing to pay the price so affixed and take the property.

But when a man assigns all his property on trust to pay his debts, an estimate of the value is of much less importance. All the assignor wants in such a case, and all the creditors can expect, is, that the fair value of the property should be applied to the payment of the debts ; and that value is best ascertained by a sale of the property. And we are of opinion, that the circumstance of

there being no estimate of the value of the property, can rarely in any case of this kind, furnish any evidence whatever of fraud ; much less conclusive evidence.

With respect to the circumstances, that the ultimate surplus is reserved to the debtor, and that there is a stipulation in the deed of assignment for a release by those who become parties to it, it is so satisfactorily shown by Mr. Justice Story, 4 Mason, 222—231, that these circumstances are not conclusive evidence of fraud, it is only necessary to say, that we entirely concur in the opinions he has expressed on these points.

There is a preference given in the assignment in this case, to the creditors of the estate of Reuben Shapley. Whether the estate of the testator, after Mrs. Shapley had given bonds to pay the debts and legacies, became so absolutely her property, that it could not have been taken to satisfy an execution, obtained against her as executrix, it is unnecessary now to settle. 16 Mass. Rep. 172, *Thompson* v. *Brown* ; 4 Pick. 97, *Stebbins* v. *Smith* ; 5 ditto, 337, *Clark* v. *Tufts.* Because it does not appear that the executrix had any estate of her own, except what she took under the will, and it was perfectly equitable and just, that the estate she thus took should be applied first to pay the debts of the testator.

And on the whole, we see nothing upon the face of the instrument of assignment in this case, which can be adjudged to render it fraudulent and void.

But it is said that the circumstance which the deed itself discloses, and the secrecy with which the deed was made, ought to have been submitted to the jury as evidence of fraud. The complaint of the tenant, involved in this point, is not, as we understand it, that the circumstances of the case were not all submitted to the jury, but that the jury were not told, that the circumstances were sufficient to sustain the charge of fraud. All the evidence in the case was, in fact, submitted to the jury, and the only ground of complaint that seems to exist, is,

that the jury were not told that the evidence was sufficient to prove the fraud, instead of being directed to consider whether the conveyance was more general, or made with greater secrecy than was necessary to carry the object honestly into effect.

We are not accustomed to express, in our directions and instructions to juries, any opinion upon the weight of the evidence, but to submit that matter entirely to the determination of the jury, to whom the determination belongs. But as the objection now raised is that the court did not express to the jury such an opinion, we have no hesitation in stating at this time, our views in relation to the weight of the evidence, and the opinion which we think must have been given, had it been proper that the court should have expressed any opinion at all upon the subject.

It was very evident from the case stated, there were large claims against the estate of the testator, and that Mrs. Shapley was deeply involved in debt. It seems to us that, under the circumstances, an assignment like the one made in this case was not only just and proper, but on the whole, advantageous to the creditors of the estate and to Mrs. Shapley. If the two sets of creditors had been left to collect their debts by the ordinary process of law, it is very clear that, such was the situation of the property, a conflict must have arisen immediately among them, which might have consumed a great part of the estate, before it could have been finally terminated.

It also appears that the assignment was made with the advice of some of the principal creditors to the estate of the testator. And there is no pretence, that suitable and responsible trustees were not selected.

These are circumstances which seem to us to be entitled to great weight in favor of the honesty and fairness of the assignment.

And what is there in this case to be put into the opposite scale against these circumstances? Why, it is said

that the indentures were made in secret. But secrecy is not of itself evidence of fraud. It is likely to accompany fraud, and may give force to other evidence, under particular circumstances. But under the circumstances of this case, if a fair distribution of the property among the creditors, according to the merits of their claims, with as little expense as possible, was fit and proper, it was clearly fit and proper that the transaction should be kept secret until the property was placed in the hands of the trustees, because the making of it public sooner would have been likely to produce all the mischief the assignment was intended to prevent. It therefore seems to us that secrecy was, under the circumstances, no evidence of a fraudulent purpose.

The facts, that all the property over which Mrs. Shapley had any control was assigned, and assigned in secret, might, under some circumstances, be strong evidence of fraud. There is, however, a wide difference, as we have before remarked, between the case, where a man who is in debt, sells in secret all his property to another, and the case where a man who is so situated, assigns all his property to others, in trust for his creditors. It is very questionable whether, when the deed of assignment contains a stipulation for a release by the creditors, the conveyance is not on the face of it fraudulent, unless all the property of the debtor is assigned. 4 Mason, 228; 5 Johns. Ch. Rep. 332. And we are clearly of opinion, that, under the circumstances of this case, the fact that all the property was assigned, is not in its nature calculated to throw the slightest suspicion upon the fairness of the transaction.

And after a most attentive and careful examination of the case, we are free to confess, that we see nothing in relation to the assignment, which could, in our opinion, have warranted a jury in finding the transaction fraudulent.

Another ground, on which the tenant claims a new tri-

al, is, that the assignment is in terms too loose and uncertain, to pass the demanded premises. But it is well settled, that in all grants made by individuals in their own right, a general description is sufficient. Perkins, sec. 114 ; Cro. Eliz. 476, *Ewer* v. *Hayden* ; and ibid. 905, *Moyl* v. *Ewer* ; 11 Johns. 36, *Jackson* v. *De Lancey* ; 13 ditto, 97, *Jackson* v. *Rosevelt* ; 6 Cowen, 720 ; 5 Mass. Rep. 51 ; Shep. Touch. 245—247.

A general description is enough, if the thing granted can be ascertained. Here it can be ascertained, of what land Reuben Shapley died seized, and what land had been conveyed by his executrix.

But it is said in behalf of the tenant, that no adequate consideration for the assignment was shown by the demandants, and a new trial is claimed on this ground. It is not pretended that the covenants of the trustees were not a good consideration. The only color for a new trial on this ground, which we can imagine, is, that it is possible Mrs. Shapley may not have been in fact insolvent, and that she may have conveyed all her property to trustees merely to delay her creditors, and then the conveyance must be adjudged fraudulent and void. It is certainly possible, that such may have been the object. But what is there in the case, that renders it in the slightest degree probable, that such was the object of the assignment ? We see nothing. Mrs. Shapley was deeply in debt. This is stated in the case. She was advised by creditors to make the conveyance. She conveyed all the property, with some trifling exceptions. She selected trustees above all objection. These circumstances render it highly improbable, that delay was the object. Had there been evidence raising any suspicion of such an object, it might have been proper to call upon the demandants to show the value of the property, and that it was not sufficient to pay the debts, in order to repel such a suspicion. But until some evidence was produced to raise a suspicion of fraud, they do not

Haven et a.
*v.*
Richardson.

seem to us to have had any occasion to show the value of the property conveyed. It was enough for the demandants, to show that there were debts to a large amount to be paid; that a legal assignment of the property had been made to pay the debts; and that many of the creditors had assented to the assignment. If the amount of property conveyed so greatly exceeded the amount of the debts as to raise any presumption of a fraudulent intent, it was the business of the tenant to show it. Fraud is not to be presumed.

But it is said, that evidence of the execution of the indenture by creditors, after it was recorded, ought not to have been admitted, because the instrument must be adjudged valid, or not, according to the facts existing when it was executed. This objection seems to be raised upon a misapprehension of the nature of the transaction. There were debts to be paid, and the assignment was made to pay the debts of those creditors, who should, within sixty days, assent to the terms of the conveyance. The creditors had that time, by the express terms of the instrument, to elect whether to become parties or not. The indenture, as an instrument of conveyance, was complete, the moment it was executed by Mrs. Shapley and the trustees. Had all the creditors refused to accept the terms proposed by the indenture, the trusts would have fallen to the ground, and then the conveyance could not have been adjudged valid against creditors. But if any creditor assented, the conveyance must stand, till the debt of such creditor was satisfied. It was only necessary, that some creditors should assent before any attachment of the property assigned was made by other creditors. No authority is cited, to show that it was necessary that the creditors should assent before the deed was recorded. No such authority is to be found. And we do not perceive any reason, why they should become parties to the instrument before it is recorded; and we think it is sufficient to sustain this con-

veyance, that creditors to a large amount had actually become parties to the indenture, before the demanded premises were attached by the tenant in this case.

And, on the whole, we are of opinion that there must be

*Judgment on the verdict.*