## The Fall River Iron Works Company *versus* John T. Croade and Trustee.

Previously to the execution of a bi-partite deed of assignment of the property of an insolvent debtor, in trust for the payment of his debts, the debtor called upon one of his creditors with the sole view of preventing him from being shocked at the news of the assignment, proposed the making of such assignment, and exhibited to him a sketch of the mode in which the proceeds of the property were to be disposed of, and this sketch, so far as regarded him, was substantially made a part of the deed. It was *held*, that this was not a sufficient assent to the assignment on the part of such creditor, although he was preferred therein, as against an attaching creditor.

In the same case, it appeared, that the assignment was executed in Rhode Island; that the assignor and assignees, by whom alone the deed was executed, were citizens of that State ; that subsequently to the execution of the assignment, a citizen of Massachusetts, who was indebted to the assignor, was summoned as his trustee in Massachusetts, at the suit of a creditor, a citizen of Massachusetts ; and that such debt was not wanted to satisfy the debts due to the assignees. It was *held*, that the assignment was invalid as against such attachment, whatever might be the effect of such assignment by the law of Rhode Island.

Upon a case stated, it appeared, that on June 2, 1829, a bi-partite deed of assignment was executed in the State of Rhode Island, by the defendant as the assignor, and by the assignees, which purported to convey all the real and personal property of the defendant to the assignees, in trust for the benefit of his creditors, some of whom were preferred ; that none of the assignees were creditors, with the exception of William Richmond 2d ; that the proceeds of the property would not exceed the sum of $11,500 ; that the debts due from the defendant to the preferred creditors amounted to the sum of $6,000, and the amount of the liabilities of such creditors, as indorsers and guarantors for the defendant, was $13,000; that at the time of the execution of the assignment, the defendant was indebted to the firm of William Richmond 2d & Co., of which firm Richmond, one of the assignees, was a member, in the sum of $1,792, upon a note indorsed by Eliza Croade, one of the preferred creditors, — in the sum of $355, upon a contract respecting a quantity of molasses, mentioned in the assignment,—and in the sum of $750, upon a promissory note, dated April 6, 1829, and payable in sixty days from the date, but not included in the assignment among the preferred debts ;

Fall River
.ron Works
     v.
  Croade
  & Tr.

that of the notes guaranteed by John T. Childe, one of the preferred creditors, a portion amounting to the sum of $1,900, was not paid at maturity ; and that there would not be recovered of the makers of these notes more than the sum of $500.

It also appeared, that the property assigned amounted nominally to more than the sum of $23,275 ; that the property was delivered on the next morning after the execution of the assignment ; that the writ in this action was served upon the trustee, who was indebted to the defendant, in the afternoon of the same day ; that notice of the assignment was given to the trustee on the next day ; that the plaintiffs were a corporation in this commonwealth ; and that the trustee resided in this county, but that the defendant, the preferred creditors, and the assignees, were citizens of Rhode Island.

It further appeared, that the defendant, on June 1, 1829, had exhibited to Childe and three others of the preferred creditors in the assignment, a schedule of his property and a list of his debts, and proposed the making of an assignment of his property on the next day ; and that he also showed them a sketch of the mode in which the proceeds of the property were to be disposed of, which, so far as regarded them, was substantially introduced into and made a part of the deed of assignment ; but that the sole purpose of the defendant in calling upon Childe, was to prevent him from being shocked at the news of the assignment.

The assignees were admitted to become parties to this action, by virtue of the provisions of *St.* 1817, *c.* 148.

The case was argued in writing.

*H. Battelle,* for the plaintiffs. The question is, whether the deed of assignment is valid and effectual to pass to the assignees the debt due from the trustee to the defendant, notwithstanding its arrest by the plaintiff.

It is contended by the plaintiffs, that the assignment would not be effectual in Rhode Island against a dissenting creditor, because none of the creditors are made parties to the assignment ; they can, therefore, have no remedy upon it at law, and there was not, at the time when the assignment was made, in that State, any court having chancery jur's liction.    *Stevens*

v *Bell*, 6 Mass. R. 342. But if the signature of Richmond may have the effect to enable the assignees to hold the property assigned, to the amount of the debts due to the firm of which he was a member, yet it will not make the assignment effectual to protect the residue of such property against the claims of creditors, arresting it by a trustee process, either in the hands of the assignees or of a third person. *Hastings* v. *Baldwin*, 17 Mass. R. 552 ; *Quincy* v. *Hall*, 1 Pick. 358 ; *Ward* v. *Lamson*, 6 Pick. 358. At the time of the service of the writ upon the trustee, none of the creditors, unless Richmond must be excepted, had become *bound to accept* the provisions of the assignment ; and however great the probability might be, that some of them would accept of its provisions, the policy of our laws will not allow the property of an insolvent debtor to be locked up until the preferred creditors shall choose to become parties to the assignment. It is incumbent on the assignees to prove, that the debt due from the trustee was necessary to enable them to pay the demands of creditors, who, at the time of the service of the writ, had become legally entitled to claim, as *parties* to the assignment. *Ward* v. *Lamson*, 6 Pick. 358 ; *Borden* v. *Sumner*, 4 Pick. 265 ; *Quincy* v. *Hall*, 1 Pick. 358.

The assignment of a chose in action does not convey a *legal* right in the debt to the assignee ; and this Court will not give effect to a general assignment made by an insolvent debtor in a foreign jurisdiction, so as to defeat the arrest of a debt under the trustee process by a citizen of this commonwealth. *Ingraham* v. *Geyer*, 13 Mass. R. 146 ; *Fox* v. *Adams*, 5 Greenl. 245.

*Hunt*, for the assignees. By the law of Rhode Island, it is not necessary that an assignment should be tripartite, in order to be effectual to convey either the personal or real property of an insolvent debtor. Assignments are generally, if not universally, made in that State, in the same form as the one in question ; and by the common law of that State, they are valid against dissenting creditors. It is not necessary, even in this commonwealth, that the creditors should become parties, that is, participators in the actual execution of the deed at the time when it was made. It is sufficient if they

assent, either *before the execution* or afterwards, or even if there should be no actual assent, provided there is no actual dissent, in case the assignment is for their benefit and interest. *Marbury* v. *Brooks*, 7 Wheaton, 556 ; *Halsey* v *Whitney*, 4 Mason, 206 ; *Nicoll* v. *Mumford*, 4 Johns. Ch. R. 522 ; *Ward* v. *Lewis*, 4 Pick. 518 ; *New England Bank* v. *Lewis*, 8 Pick. 113 ; *Wilt* v. *Franklin*, 1 Binney, 502. Here the preferred creditors, by agreeing with the assignor, that he should make the assignment, constituted him their agent, and are bound by his acts. There was no necessity for any further assent on their part.

The preferred creditors were legally entitled to claim under the assignment, it having been made for their benefit ; and the assignees were therefore bound to appropriate the property to the payment of the demands of the preferred creditors. These demands absorbed the whole ; and there was, therefore, no surplus which could be attached by a dissenting creditor. *Nunn* v. *Wilsmore*, 8 T. R. 521.

In answer to the objection, founded on the fact, that there was not, at the time of the assignment, any court in Rhode Island having chancery jurisdiction, it is contended, that if no remedy could be had in the State courts, it might be obtained in the present case, in the Circuit Court of the United States. Another answer is, that the General Assembly of that State had jurisdiction.

It is objected, that the assignment of a chose in action does not convey a legal right to the assignee, and that this Court will not give effect to this assignment, which was made in a foreign jurisdiction, so as to defeat the arrest of a debt on a trustee process, commenced by one of the citizens of this commonwealth. But it is contended in answer, that the assignment of a chose in action conveys an *equitable right* to the assignee ; and it is presumed, that, whether an assignment be made in a foreign jurisdiction or here, if there be no fraud, the courts of this commonwealth will protect the rights of all parties, without regard to the place of their residence. *Inglis* v. *Grant*, 5 T. R. 530 ; *Boylston* v. *Greene*, 8 Mass. R. 465 ; *Dix* v. *Cobb*, 4 Mass. R. 508. It is as equitable, that the assignees should hold this property

by virtue of the assignment, as that the plaintiffs should, under their attachment.

Fall River
Iron Works
v.
Croade
& Tr.
Oct. term
1831, in
Plymouth

MORTON J. drew up the opinion of the Court. Scarcely any subject has been more frequently before our Court or commanded more of its attention, than that of trust assignments. And it may reasonably be presumed, that the principles applicable to them are as well settled as any in our jurisprudence. Our laws of attachment and other local legislation may have given to them some peculiarities. But a long course of judicial decisions has reduced them to a system which is, in itself, symmetrical, and, in practice, operates favorably.

Assignments by insolvent debtors in trust to pay their debts, either in a specified order or *pro ratâ*, are not deemed of sufficient validity to protect the assigned property from the attachments of the creditors of the assignor. There is no adequate consideration ; and without this, no insolvent debtor can so dispose of his property as to place it beyond the reach of his creditors. The validity of such assignments must depend upon the assent of the creditors. Nothing being paid by the assignees, the consideration, as to them, must consist in their covenants to execute the trusts. The creditors are not obliged to become parties to them. Nor is their assent to their provisions to be presumed. They may prefer to resort to attachments. The option is to be exercised by them and to be evidenced by some overt act on their part.

If they decline or omit to join in the assignment, there are no *cestui que trusts*, and so no trusts to be executed, and the consideration entirely fails. All the objects of the assignment are defeated, and the whole proceedings prove abortive, leaving the assigned property to be taken by the creditors in such way as they may deem expedient.

If the specific property remains, it may be attached in the ordinary method. If the assignees take possession of it, and especially if they convert it into money, it may be attached in their hands by the process of foreign attachment, and if the choses in action remain uncollected, they may be attached by the same process, in the hands of the debtors of the assignors    *Widgery* v. *Haskell*, 5 Mass. R. 144 ; *Marston* v.

Fall River
Iron Works
v.
Croade
& Tr.

*Coburn,* 17 Mass. R. 454 ; *Quincy* v. *Hall,* 1 Pick. 358 ; *Harris* v. *Sumner,* 2 Pick. 129 ; *Viall* v. *Bliss,* 9 Pick. 13 ; *Russell* v. *Woodward,* 10 Pick. 408 ; *Foster* v. *Saco Man. Co.,* 12 Pick. 451.

If the creditors elect to become parties to the assignment, and their debts amount to as much as the assigned property, this will complete the intended consideration, render the conveyance effectual, even against other creditors, and vest in the assignees the whole property, whether *real, or personal, or choses in action.* This rests upon the established principle, that an insolvent debtor has a legal right to convey his estate to whom he pleases, for a valuable consideration, although it may benefit some and prejudice other of his creditors. *Hatch* v. *Smith,* 5 Mass. R. 42 ; *Hastings* v. *Baldwin,* 17 Mass. R. 552 ; *Lupton* v. *Cutter,* 8 Pick. 298 ; *Gore* v. *Clisby,* 8 Pick. 555. If the debts of the creditors who assent to the assignment, are of less amount than the property assigned, then they will constitute a good consideration *pro tanto,* and give the assignees a right to retain to the amount of such debts. But the balance remaining in their hands will be liable to attachment by the trustee process. If after satisfying the claims of all the parties to the assignment, any of the property remains in its original situation, or if any of the *choses in action* remain uncollected, they may be attached by the appropriate processes. *Dennie* v. *Hart,* 2 Pick. 204 ; *Andrews* v. *Ludlow,* 5 Pick. 28 ; *Ward* v. *Lamson,* 6 Pick. 358 ; *Webb* v. *Peele,* 7 Pick. 247.

In the case at bar, the indentures, which were of two parts and intended to be executed by two parties only, were in fact merely executed by the assignor and assignees. No creditors executed them professedly as such. One of the assignees was also a creditor ; and if his signature be deemed sufficient to make him a party in the character of a creditor, it will have no effect upon the decision ; for the assigned property was much greater than was needed to pay the whole of his debt, without having recourse to that in the hands of the trustee.

The agreed fact, that the defendant informed some of the preferred creditors of his intention to make an assignment,

and showed them a sketch of the form in which it was to be <span style="float:right">Fall River<br>Iron Works<br>v.<br>Croade<br>& Tr.</span> made, did not make them parties to it ; nor is it evidence of their assent to its provisions. We do not intend to decide whether it is necessary, that creditors should actually sign the indenture, to make it binding upon them, or what evidence of their assent may be admissible. But as neither the debtor nor the creditors supposed that their assent was necessary, or that they had the option to withhold or grant it, and as the sole purpose of informing them was to prevent surprise and a shock upon them, we can see nothing tending to show their assent.

These well-settled principles seem to be applicable to and decisive of the question before us, unless another objection taken by the assignees shall prove to be well founded.

The assignment was executed in the State of Rhode Island, and the parties to it were inhabitants of that State. It is contended, that by the laws of that State it was valid and effectual to vest the property in the assignees, and that a transfer of personal property according to the laws of the State where the parties reside, is good everywhere, and passes all such property whether situated within or without the same jurisdiction.

We have neither the means nor the inclination, to decide upon the conformity of this mode of conveyance to the laws of another State. It is not necessary to our present purpose to do so. For even if it would there be deemed to be legal, we think it cannot operate in this State to defeat an established remedy by one inhabitant of this State against another.

We need not here consider the question, whether a conveyance of personal property legal in the place where the parties reside, may be avoided elsewhere. This assignment would have been valid in this State, and doubtless would have passed property to the amount of the *assignee's debts*. If avoided at all, it must be on the ground of fraud. Now whether it shall be deemed fraudulent or not, must depend on proof, produced before our courts, and must be governed by our rules of evidence and our laws. The trustee is an inhabitant of this State. The plaintiff is entitled to all the rights of a citizen; for the charter of incorporation was granted

by our legislature; its place of business is fixed here; the corporators are supposed to be inhabitants of this State; and if a corporation can be said to have a local habitation, it must be considered as belonging here.

Different states adopt different systems of policy touching the relation of debtor and creditor, and the right and power of the one over the person and property of the other. Each prescribes its own forms of judicial proceedings, its own modes of recovering demands and enforcing judgments, and its own regulations for securing the property or the persons of debtors. These are supreme within the state, and cannot be affected by the laws of other states. Although in the construction of instruments and in determining the legal effect of them, the *lex loci* or the *lex domicilii* may, according to circumstances, govern, yet in the remedy and the mode of enforcing it, we are always governed by our own laws.

We have adopted our own system of attachments. The plaintiff by it had a right to avoid the assignment and arrest the debtor's property in the hands of the trustee. Can the defendant, by an act done in another State, without the knowledge or consent of the plaintiff, defeat this right, and thus entirely prevent the collection of a just debt?

We know of no principle of law or comity which requires us to give this advantage to citizens of other States over our own, or to make our processes of attachment subordinate to the voluntary insolvent laws of private individuals of other States.

The case of *Ingraham* v. *Geyer*, 13 Mass. R. 146, cannot be distinguished from this by the slightest shade, and unless it be overruled must govern it. The more recent case of *Borden* v. *Sumner*, 4 Pick. 265, although the facts do not fully appear in the report, is exactly in point. The only distinguishing feature is in favor of the case at bar; for in that, the plaintiffs, as well as all the parties to the assignment, were inhabitants of Rhode Island. See also *Dawes* v. *Boylston*, 9 Mass. R. 337; *Orr* v. *Amory*, 11 Mass. R. 25; *Meeker* v. *Wilson*, 1 Gallison, 419. The same doctrine nas even in a stronger case been adopted by the Supreme Court of Maine   *Fox* v. *Adams*, 5 Greenl. 245.

Fall River
Iron Works
*v.*
Croade
& Tr.

The same principle has been applied to assignments under the bankrupt laws of foreign states. This subject was learnedly investigated and entirely exhausted, in reference to authorities and in argument, in *Blake* v. *Williams*, 6 Pick. 286.

*Trustee charged.*